Samuel Henderson (SBN: 279717)
Henderson Consumer Law
henderson@hendersonconsumerlaw.com
185 W. F St. Suite 100-J
San Diego, California 92101
Tel: (760) 575-4594
Fax: (760) 688-3732

Alara T. Chilton (SBN 236711)
Law Office of Alara T. Chilton
alarachilton@gmail.com
185 W. F St. Suite 100-J
San Diego, CA 92101
Tel: (619) 672-7201
Fax: (619) 924-7354

Attorney for Plaintiffs,
Jose Sanchez and Maria Sanchez

# UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE SANCHEZ and MARIA SANCHEZ<br>　　　　　　　Plaintiffs,<br><br>　　vs.<br><br>BRAINSTORM USA, LLC, *dba* ORCHARD LEARNING SYSTEMS, a limited liability company, and EQUITABLE ACCEPTANCE CORPORATION, a Minnesota corporation, and Does 1-10<br><br>　　　　　　　Defendant(s). | Case No.: **'17CV0933 JLS  BGS**<br><br>COMPLAINT FOR<br><br>• Violations of the Truth in Lending Act;<br>• Violations of the Consumer Legal Remedies Act; and,<br>• Violations of the Rosenthal Fair Debt Collection Practices Act<br><br>JURY TRIAL REQUESTED |

## I. INTRODUCTION

1. Plaintiffs Jose Sanchez and Maria Sanchez (collectively "Plaintiffs" or "the Sanchez's") bring this action to challenge the actions of Brainstorm USA, LLC, *dba* Orchard Learning Systems, a limited liability company, ("Brainstorm"), and Equitable Acceptance Corporation a Minnesota corporation, ("Equitable"), and Does 1-10 (Collectively "Defendants") regarding an educational software program "educational program" that Defendants sold to Plaintiffs and in doing so, committed several violations of law, including violations of the Truth in Lending Act, Title 15 United States Code section 1601, *et seq.* ("TILA"), the California Consumers Legal Remedies Act, California Civil Code section 1750, *et seq.* ("CLRA"), and violations of the Rosenthal Fair Debt Collection Practices Act, California Civil Code section 1788, *et sq.*

## II. JURISDICTION AND VENUE

2. Original Jurisdiction of this Court arises under federal question pursuant to Title 28 of the United States Code section 1331 and Title 15 of the United States Code section 1640(e). Further, this Court has supplemental jurisdiction pursuant to Title 28 of the United States Code section 1367 for state claims.

3. Venue is proper in the United States District Court, Southern District of California pursuant to Title 28 of the United States Code section 1391 for the following reasons: (i) Plaintiff resides in the county of San Diego, state of California, which is within this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and, (iii) Defendants conducted business in this judicial district at all relevant times.

4. Plaintiffs make these allegations on information and belief, with the exception of those allegations that pertain to a plaintiff, or to a plaintiffs' counsel, which Plaintiffs allege on personal knowledge.

5. While many violations are described below with specificity, this Complaint alleges violations of the statutes cited in their entirety.

COMPLAINT

6. Any violations by Defendants were knowing, willful, and intentional, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

7. At all times herein mentioned, upon information and belief, Defendants were the agents, servants, and/or employees of their co-defendants and Defendants acts shall mean that Defendants did the acts alleged through their officers, directors, managers, agents representatives and/or employees while they were acting within the course and scope of said agency, authority, and employment.

### III. PARTIES

8. Plaintiff Maria Sanchez ("Plaintiff" or "Mrs. Sanchez"), is a natural person, an adult, and resides in San Diego County, California, and was a resident of San Diego at the time of the acts complained of here.

9. Plaintiff Jose Sanchez ("Plaintiff" or "Mr. Sanchez"), is a natural person, an adult, and resides in San Diego County, California, and was a resident of San Diego at the time of the acts complained of here.

10. Plaintiffs are informed and believe that Defendant Brainstorm is and was at all times relevant this Complaint was, a Georgia limited liability company with a principle place of business at 490 Sun Valley Dr., Suite 202, Roswell, Georgia 30076.

11. Plaintiffs are informed and believe that Defendant Acceptance is and was at all times relevant in this complaint, a Minnesota Corporation with its primary place of business at 1200 Ford Road, Minnetonka, Minnesota 55305.

12. The true names and capacities, whether individual, corporate, association, or otherwise of Defendants named herein as DOES 1 through 10 are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names. Plaintiffs will seek leave to amend this Complaint to allege their true names and capacities when the same have been ascertained. Plaintiffs are informed and believe that each of the fictitiously named Defendants and/or their agents and employees are

responsible in some manner for the events and happenings alleged in this Complaint, and proximately caused Plaintiffs' damages.

## VI. JURY TRIAL DEMAND

13. Plaintiffs demand a jury trial.

## V. FACTUAL ALLEGATIONS

14. Some time in late April/ early May 2016, Mrs. Sanchez received a phone call on her home-line. The caller, a woman, communicated in Spanish and asked Maria if she was Maria Sanchez. Mrs. Sanchez was surprised the female caller knew her name and confirmed she was indeed Maria Sanchez. The female caller informed Mrs. Sanchez that she knew she had 3 school age children and asked her to confirm all their names. Mrs. Sanchez confirmed the names of her three girls and believed this call had originated from a school program. The caller said she had programs to help Mrs. Sanchez's children with their schoolwork. The caller also said that they needed to make an appointment to have a man from Los Angeles come to Mrs. Sanchez's home and explain the programs to her.

15. Mrs. Sanchez agreed to an appointment on the morning of May 8, 2016, when her husband would be home. The caller never identified that this program as being offered for sale. Accordingly, Mrs. Sanchez believed it was program offered though her childrens' school for low-income families.

16. On May 8, 2016, a man arrived at the home of the Sanchez's. He spoke in Spanish, and identified himself as "Angel" with Orchard Learning. Angel presented to the Sanchez's regarding the educational program. He said he had a computer program that would help his children succeed in school. He explained that this program had helped many families and that his own son had even benefited from this program.

17. Angel said this was program for low-income families. Mr. Sanchez stated he believed his family qualified for the program because he was the sole bread-

4
COMPLAINT

winner. Angel then asked Mr. Sanchez's for their last year's tax return to confirm that they would qualify for this program. Mr. Sanchez provided the tax return to Angel.

18. Mr. Sanchez asked Angel about the return policy. He asked if he could return it in the event the educational program did not work or if his children did not like it. Angel stated that Mr. Sanchez could return it on those conditions.

19. The Sanchez's relied on the representations made by Angel concerning the return policy when they purchased this educational program. If Angel had not made these representations, the Sanchez's would not have agreed to purchase this educational program for their children.

20. Angel reviewed the documents and said they qualified for the educational program. Angel stated it normally costs $6,000.00 but stated they would only pay $1,500.00. The Sanchez's believed they were getting a great value for this program. On information and belief, the educational program cost was not actually reduced because of any "income qualifications" of the Sanchez's.

21. Angel then filled out the financing form(s) in Spanish. The financing was through Equitable Acceptance Corporation. Mr. Sanchez did not know that the financing would be through a third party and based on the representations of Angel, believed that he and his wife would make payments directly to the company, Orchard Learning. Angel said to "sign here." The Sanchez's signed the document titled "Equitable Acceptance Revolving Credit Plan." This document identifies a NSF fee of $20 if a payment is rejected.

22. When the educational program arrived, Mr. Sanchez followed Angel's instructions and called the number that Angel had provided to request someone to install the program. After some time, a man was sent to install the program. He did so on the desktop computer, which is used by the Sanchez's eldest daughter, Kimberly. The man informed Kimberly that she could install this program on the laptop so that her younger siblings could use the program.

23. Sometime after the man left, Kimberly attempted to install the educational program on the laptop. Despite following the instructions, she was unable to install it. Kimberly called customer service and with a representative's help, was able to install it. The installation process required Kimberly to spend more than two hours.

24. The next day, Kimberly's sister informed Kimberly that the educational program did not work on the laptop. Kimberly tried to re-install in the next day. Later, her sister found the educational program did not work on the laptop.

25. The Sanchez's were very frustrated that educational program did not work despite their children efforts to install the educational program.

26. Mr. Sanchez called customer service for Orchard Learning. A man answered the call and spoke in Spanish. Mr. Sanchez informed him that the educational program did not work and that he wanted to return it. The man said he could not return it he because he signed a contract. Mr. Sanchez informed him that the person who sold him the program told him and his wife that they could return the educational program if it did not work, or if his children did not like it. The customer service man told Mr. Sanchez he would have to contact the man who sold them the educational program. He also accused Mr. Sanchez of having made copies of the disks and wanting to return the educational program for this reason.

27. The documents provided in relation to the sale of the educational program include several documents. The "Equitable Acceptance Revolving Credit Plan" provides that "In the states of CA, LA, ME, MD, MN, MS, NY, NC, NE, VA, VT new purchases will not be added to my beginning balance until the first day of the next billing period and finance charges will not be imposed on those new purchases until such date." However, Mr. Sanchez's first bill showed that interest was being added immediately at the date of purchase, contrary to the language provided in this document.

28.     The "Equitable Acceptance Revolving Credit Plan" also contains a venue/ jurisdiction clause, which provides that "I agree that you may, as determined within your sole discretion, sue me for any default and/or breach of any term of this agreement, and may do so in the courts of the State of Minnesota. I further agree by signing this agreement to submit personally to the jurisdiction of any such Minnesota court."

29.     Additionally, the Orchard Learning Systems "Preferred Customer Agreement" identified a $1,375.00 purchase price plus $96.00 in shipping, handing, and warranty coverage for a subtotal of $1,471.00. This agreement then added $129.00 in taxes for a total of $1,600.00. The tax was applied to the entire subtotal. Since the transaction occurred in Oceanside, California, where the sales tax rate was 8.0%, Mr. Sanchez was over charged at a by at least $11.32.

30.     While none of the paperwork properly identified the amount of finance charges, on information and belief, the finance charge would be around $650.00 given the identified interest rate and payment structure. The Sanchez's would not have entered into the contract had they known they would pay such a high amount in finance charges.

31.     None of the paperwork provided to the Sanchez's identified the "total of payments" that the Sanchez's would have to pay.

32.     None of the paperwork provided to the Sanchez's disclosed the "Annual Percentage Rate" in the form required by the Truth in Lending Act.

33.     On information and belief, the rate of 18.99% was off by more than .125%, in violation of the Truth In Lending Act.

34.     On information and belief, if the amount did not include unlawful tax amounts, the identified rate of 18.99% was off by more than .125%, in violation of the Truth In Lending Act.

35.     The first billing statement provided by Defendant Equitable to the Sanchez's identified the period from May 13, 2016 through June 6, 2016. It

identified a due date of June 25, 2016 and a minimum payment of $45.00. This statement did not identify that failure to pay by the due date would result in a late fee. It did not identify the balance used to determine the finance charges. These omissions would be a violation of the Truth In Lending Act if this account constituted an open-ended account. However, it was not an open-ended account, contrary Defendants' assertions.

36. The second billing statement provided by Defendant Equitable to the Sanchez's identified the period from June 7, 2016 through July 6, 2016. It identified a due date of July 25, 2016. It did not identify that failure to pay by the due date would result in a late fee. It did not identify the balance used to determine the finance charges. The statement did identify that a payment had been made on June 20, 2016 in the amount of $45.00. These omissions would be a violation of the Truth In Lending Act if this account constituted an open-ended account. However, it was not an open-ended account, contrary Defendants' assertions.

37. In the summer of 2016, the Sanchez's received a voicemail from Defendant Equitable claiming that that payment on the account was late and the full amount was due. This was false as the Sanchez's had always paid the minimum payment by the due date. The threat caused Mr. and Mrs. Sanchez to worry, as immediate payment of the full amount would have been a severe financial hardship for their family.

38. On March 14, 2017, a demand letter was sent to Defendant Brainstorm, certified mail, return receipt requested, outlining the various violations of the defendants pursuant to the Consumer Legal Remedies Act. This letter was received by Defendant Brainstorm on or around March 20, 2017.

39. On March 21, 2017, a settlement offer was provided by Defendant Brainstorm. That offer was rejected as not rectifying the situation pursuant to the Consumer Legal Remedies Act.

40. On March 14, 2017, a demand letter was sent to Defendant Equitable, certified mail, return receipt requested, outlining its various violations of the Consumer Legal Remedies Act. This letter was received by Defendant Equitable on or around March 20, 2017.

41. Defendant Equitable's written response to Plaintiffs demand letter was that the account has been sent back to Defendant Brainstorm.

42. As a direct and proximate result of Defendants' actions, the Sanchez's suffered damages.

## V. FIRST CLAIM FOR RELIEF

**(Violations of the Truth in Lending Act against all Defendants)**

43. Plaintiff repeat, re-allege and incorporate by reference paragraphs one through forty-two above.

44. Title 15 Unites States Code section 1638 provides that the creditor shall disclose the "amount financed", the "finance charge", "annual percentage rate ", as well as other items so that the consumer can make an informed decision regarding the credit being offered.

45. Defendants' unlawful activities relate to a consumer credit purchase and as such Plaintiffs constitute a "consumer" as defined by Title 15 United States Code section 1602(i).

46. Both defendants are "creditors" as defined by Title 15 United States Code section 1602(g)

47. Defendant Brainstorm and Defendant Equitable violated the Truth in Lending Act. Defendants violations include but are not limited to the following:

    a. Violations of Title 15 United States Code section 1638(a)(2)(A) by failing to properly or accurately disclose the "amount financed";

    b. Violations of Title 15 United States Code section 1638(a)(3) by failing to properly or accurately disclose the "finance charge";

    c. Violations of Title 15 United States Code section 1638(a)(4) by failing to properly or accurately disclose the "annual percentage rate";

    d. Violations of Title 15 United States Code section 1632(a) by failing to disclose "more conspicuously" the "annual percentage rate";

    e. Violations of Title 15 United States Code section 1638(a)(5) by failing to properly or accurately disclose the "total of payments";

    f. Violations of Title 15 United States Code section 1638(a)(6) by failing to properly or accurately disclose the number and due dates of the payments; and

    g. Violations of Title 15 United States Code section 1638(a)(7) by failing to properly or accurately disclose the "total sales prices".

48. As a direct and proximate result of Defendants' actions, Plaintiffs have suffered damages.

## VI. SECOND CLAIM FOR RELIEF

**(Violations of the California Consumer Legal Remedies Act by all Defendants)**

49. Plaintiffs repeat, re-allege, and incorporate by reference paragraphs one through forty-eight above.

50. Plaintiffs are consumers as defined by California Civil Code section 1761(d).

51. The software obtained by Plaintiffs are "goods" or "services" as defined by California Civil Code section 1761(a) and (b), respectively.

52. Defendant Brainstorm is a "person" as defined by California Civil Code section 1761(c).

53. Defendant Equitable is a "person" as defined by California Civil Code section 1761(c).

54. Defendants Equitable and Brainstorm violated California Consumer Legal Remedies Act, California Civil Code section 1750, *et seq.* Defendants' violations include, but are not limited to the following:

a. Violations of California Civil Code section 1770(a)(5) by misrepresenting that the education program was offered through the school that the children of the Sanchez's attended;

b. Violations of California Civil Code section 1770(a)(5) by misrepresenting the return policy;

c. Violations of California Civil Code section 1770(a)(13) by making false or misleading statements regarding the actual cost of the program and basis for reducing the cost;

d. Violations of California Civil Code section 1770(a)(14) by identifying that there was a $20.00 non-sufficient fund fee in violation of California law;

e. Violations of California Civil Code section 1770(a)(14) by charging interest in violation of "Equitable Acceptance Revolving Credit Plan";

f. Violations of California Civil Code section 1770(a)(14) by misrepresenting the return policy;

g. Violations of California Civil Code section 1770(a)(14) by misrepresenting the venue and jurisdiction of litigation regarding the agreement or default; and

h. Violations of California Civil Code section 1770(a)(14) by overcharging the amount of tax permitted by law;

i. Violations of California Civil Code section 1770(a)(19) by inserting unconscionable venue and jurisdiction provisions into the agreement contrary to California law.

55. As a direct and proximate result of Defendants' actions, the Sanchez's have suffered damages.

## VII. THIRD CLAIM FOR RELIEF
**(Violations of the California Rosenthal Fair Debt Collection Practices Act as to Defendant Equitable)**

56. Plaintiffs repeat, re-allege and incorporate by reference paragraphs one through fifty-five above.

57. Plaintiffs are informed and believe, and based thereon, allege that Defendant Equitable is a person who, in the ordinary course of business, regularly, on behalf of itself or others, engages in debt collection as that term is defined by California Civil Code § 1788.2(b), is therefore a debt collector as that term is defined by California Civil Code section § 1788.2(c) of the RFDCPA.

58. Jose Sanchez is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the RFDCPA.

59. Maria Sanchez is a natural person from whom a debt collector sought to collect a consumer debt which was due and owing or alleged to be due and owing from Plaintiff, and is a "debtor" as that term is defined by California Civil Code § 1788.2(h) of the RFDCPA.

60. Defendant Equitable violated the Rosenthal FDCPA. Defendant's violations include, but are not limited to the following:

   a. Violations of California Civil Code section 1788.17 by violating Title 15 United States Code section 1692e, by making a false, deceptive or misleading misrepresentation in the collection of a debt;

   b. Violations of California Civil Code section 1788.17 by violating Title 15 United States Code section 1692e(2)(A), by making a false representation of the character, amount, or legal status of any debt; and

   c. Violations of California Civil Code section 1788.17 by violating Title 15 United States Code section 1692f(1), by attempting to collect unauthorized amounts.

61. As a direct and proximate result of Defendant's actions, the Sanchez's have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that judgment be entered against Defendants, and Plaintiffs be awarded damages from Defendants, as follows:

a. An award of statutory damages pursuant to 15 U.S.C. §1640(a) against each Defendant;

b. An award of punitive damages pursuant to California Civil Code section 1780(a)(4);

c. An award of statutory damages of $1,000.00 pursuant to Cal. Civ. Code § 1788.30(b) against Defendant Equitable;

d. Attorney's fees;

e. Costs;

f. Actual damages according to proof;

g. Injunctive relief as to the unlawful acts;

h. Interest, if applicable; and

i. Award Plaintiffs any other relief as may be just and proper.

Respectfully submitted,

Date: May 7, 2017

/s/ Samuel Henderson
Samuel Henderson
Attorney for Plaintiff